UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Chamroeun Phan,<br><br>                       Petitioner,<br><br>v.<br><br>Joel Brott, Sherburne County Sheriff, and Scott Baniecke, Field Office Director, Immigration and Customs Enforcement, all individuals being sued in their Individual and official capacity,<br><br>                       Respondents. | Case No. 17-cv-432 (DWF/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

On February 9, 2017, Petitioner Chamroeun Phan filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his custody by U.S. Immigration and Customs Enforcement (ICE). (Pet. [Doc. No. 1].) As set forth below, the Court recommends that the Petition be granted and Petitioner's Motion for Leave to File Evidence in Support of Petition for Habeas Corpus [Doc. No. 21] be granted.

**I.    Background**

Petitioner is a native of Thailand and a citizen of Cambodia. (Lee Decl. ¶ 4 [Doc. No. 1].) Petitioner was admitted into the United States in 1984 as a refugee, and his status was adjusted to that of a lawful permanent resident on March 31, 1986. (Her Decl. Ex. C (Notice to Appear) [Doc. No. 1-3].) On October 26, 2007, he was convicted of Drugs-Fifth Degree-Possess Schedule 1,2,3,4—Not Small Amount of Marijuana in

1

violation of Minnesota Statute 152.025.2(1) in Ramsey County (Minnesota) District Court, and sentenced to five years probation. (Lee Decl. ¶ 4.) On September 3, 2009, he was convicted in Ramsey County District Court of Damage to Property-First Degree, in violation of Minnesota Statute 609.595.1(3), and sentenced to 365 days incarceration. (Lee Decl. ¶ 5.)

On October 5, 2011, Petitioner was served with a Notice to Appear for removal proceedings. (Lee Decl. ¶ 6.) He was charged as removable under § 237(a)(2)(A)(iii) of the Immigration and Nationality Act (8 U.S.C. § 1227) due to his conviction of an aggravated felony. (Lee Decl. ¶ 6.) He was also charged as removable under section 237(a)(2)(B)(i) of the Act, as amended, after he was convicted of a violation of any law or regulation of a State relating to a controlled substance. (Lee Decl. ¶ 6.)

Petitioner was ordered removed to Cambodia on June 20, 2013. (Lee Decl. ¶ 7.) ICE then issued a Warrant of Removal/Deportation on June 24, 2013, and Petitioner was detained. (Lee Decl. ¶ 8.) A few months later, on September 30, 2013, Petitioner was released on an Order of Supervision because there was a lack of significant likelihood of removal in the reasonably foreseeable future. (Lee Decl. ¶ 7; Resp. Pet. Habeas Corpus at 3 [Doc. No. 9].) According to Respondents, the removal rate to Cambodia improved after 2013, and in 2016, ICE successfully repatriated seventy-one Cambodian nationals. (Lee Decl. ¶ 9.)

In August 2016, representatives from the Government of Cambodia agreed to travel to the United States to conduct interviews with Cambodian nationals with final removal orders. (Lee Decl. ¶ 10.) Petitioner's supervised release was revoked to

facilitate the interview process. (Lee Decl. ¶ 10.) On September 7, 2016, Petitioner met with Cambodian government representatives in California. (Lee Decl. ¶ 12.) Petitioner returned to Minnesota on October 18, 2016, but remained still in custody. (Lee Decl. ¶ 13.)

On February 3, 2017, the Cambodian government issued Petitioner a travel document. (Harrison Decl. ¶ 3 [Doc. No. 8].) In preparation of his removal, ICE moved Petitioner to Oakdale, Louisiana to stage for removal. (Lee Decl. ¶ 17.) On February 9, 2017, Petitioner filed this Petition, seeking immediate release from ICE custody pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), because more than six months had passed since he was first detained and because there was not a significant likelihood of removal in the reasonably foreseeable future. (Pet. at 9.)

Several important developments occurred in this case after the original briefing was completed on Petitioner's habeas petition. On March 27, 2017, an immigration judge granted a motion to reopen on the basis that Petitioner had demonstrated his eligibility for relief from removal based on a change in the law and had shown a substantial likelihood of a different result to his case. (Supp. Habeas Pet. Ex. G at 2-3 [Doc. No. 14-1].) The immigration judge also found that Petitioner was entitled to favorable discretion in light of his strong family ties to United States, the hardship his immediate relatives would suffer if he was deported, and the evidence of rehabilitation from his criminal convictions. (*Id.* at 3-4.)

On May 17, 2017, the immigration judge granted Petitioner an adjustment of status to that of a permanent resident under INA §245, along with a waiver under INA

3

§212(h).  (Supp. Habeas Pet. Ex. H [Doc. No. 14-2].)  The Department of Homeland Security ("DHS") appealed that decision on May 25, 2017, to the Board of Immigration Appeals.  (Second Lee Decl. ¶ 11 [Doc. No. 16].)  The Board of Immigration Appeals issued a briefing schedule, with appeal briefs due on July 20, 2017.  (Second Lee Decl. ¶ 12.)  DHS then moved for an extension of briefing, and its request was granted, making its brief due August 10, 2017.  (Status Report on DHS Appeal to Board of Immigration Appeals Ex. 1 [Doc. No. 19-1].)

On August 8, 2017, Petitioner's travel documents from Cambodia expired.  (Second Lee Decl. ¶ 13.)  ICE agent Xiong Lee declared on July 19, 2017, that "Per ICE removal headquarters, it is likely the Cambodian government will re-issue a new travel document at the conclusion of [Petitioner's] case if he is ordered removed to Cambodia and the document has expired."  (Second Lee Decl. ¶ 14.)  There is nothing in the record, however, as to whether an application has been made to the Cambodian government for such travel documents.  On August 12, 2017, Petitioner filed a motion for leave to file additional evidence in support of his habeas petition [Doc. No. 21].  With his motion, Petitioner filed an article from The Cambodia Daily, dated August 11, 2017, which quotes Cambodian officials as stating that the government of Cambodia has now "halted issuance of any further travel documents."  (Motion Leave File Evidence Supp. Pet. Habeas Corpus Ex. 1 [Doc. No. 21-1].)

## II. Analysis

Petitioner has now been detained for more than a year.  During the first portion of his detention, Petitioner was subject to a final removal order.  During the second portion,

and currently, Petitioner is no longer subject to a final removal order. The Court explains the standards for reviewing the constitutionality of the two different types of detention and their interplay below.

After a person is subject to a final order of removal from the United States, he cannot be detained indefinitely, in accordance with constitutional due process. *Zadvydas*, 533 U.S. at 699-700. In *Zadvydas*, the Supreme Court held that removal detentions of six months or less are presumptively constitutional, but detentions longer than six months will meet due process standards only if a "significant likelihood of removal in the reasonably foreseeable future" exists. *Id.* at 701. In allocating the burdens between a petitioner and the Government, the Supreme Court stated:

> After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

Because Petitioner is no longer subject to a final removal order, Respondents argue that they have the authority to detain him under Section 236 of the Immigration and National Act ("INA"), which governs the custody of aliens during removal proceedings. *See* 8 U.S.C. § 1226. Under that statute, DHS has discretion to detain an alien during his

removal proceedings. 8 U.S.C. § 1226(a). More specifically, 8 U.S.C. § 1226(c), provides:

> The Attorney General shall take into custody any alien who—
>
> . . .
>
> is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year
>
> . . .
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

In 2007, the Honorable Patrick J. Schiltz, as a matter of first impression in this District, analyzed "the legal implications of the fact that, under § 1231 [statute on detention, release, and removal of aliens ordered removed], time that was once characterized as removal-period and *post*-removal-period detention might be transformed by later events—such as a circuit court's granting a petition for review—into *pre*-removal-period detention." *Bah v. Cangemi*, 489 F. Supp. 2d 905, 917 (D. Minn. 2007). Judge Schiltz considered cases from other circuits as well as statutory authority and adopted an "unencumbered-time" approach. Under that approach, a court:

> focuses on counting the amount of removal-period and post-removal-period time during which immigration officials could lawfully have removed the alien. All of this "unencumbered" time—for example, time between an administratively final removal order and a stay order, and time after lifting of a stay but before actual removal—counts toward the six-month *Zadvydas* period.

*Id.* at 918.

Judge Schiltz held "that allowing unlimited pre-removal-period detention under § 1226 would be inconsistent with the reasoning underlying *Zadvydas*." In so holding, he acknowledged the decision of the United States Supreme Court in *Demore v. Kim*, 538 U.S. 510 (2003), in which the Supreme Court affirmed the legality of a lack of due process for aliens detained during pre-removal proceedings because the detention was reasonably related to removal and was for a short period of time. Judge Schiltz noted, however, that the Supreme Court explained that pre-removal detention under § 1226(c) "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal." *Id.* at 918 (citing *Demore*, 538 U.S. at 528-30.) Ultimately, Judge Schiltz recognized that continuous detention under a combination of § 1226 and § 1231 posed the same constitutional concerns attendant to potentially indefinite detention that the Supreme Court recognized in *Zadvydas*. *Id.* at 920. As he observed, no matter the characterization by the Court or the Government, "to an alien, detention is detention. He or she is no more free when detained under § 1226 than when detained under § 1231." *Id.* at 920.

Magistrate Judge Susan Richard Nelson (now a United States District Judge) reached the same conclusion a year earlier in a Report and Recommendation adopted without change by Chief Judge James M. Rosenbaum, similarly applying the principles of *Zadvydas* to a habeas petition of an alien whose removal was, for relevant purposes, pre-removal-period detention under § 1226. *Moallin v. Cangemi*, 427 F. Supp. 2d 908, 924-29 (D. Minn. 2006). In that case, the alien had been in § 1226 custody for over 13 months, and Judge Nelson concluded that "any § 1226 detention beyond the six-month

7

period implicitly recognized as reasonable in *Demore* should count toward the *Zadvydas* six-month clock." *Bah*, 489 F. Supp. 2d at 920 (citing *Moallin*, 427 F. Supp. 2d at 926). Judge Nelson ultimately granted the habeas petition where there was no plan or timetable for the alien's removal. *Moallin*, 427 F. Supp. 2d at 926.

Here, Petitioner was held from August 29, 2016, through March 27, 2017, pursuant to a final removal order. After March 27, 2017, and continuing through this date, Petitioner has ostensibly been held under 8 U.S.C. § 1226(c) for pre-removal proceedings. The parties agree that this Court's review is limited to the constitutionality of Petitioner's detention while his removal proceedings are pending. Therefore, although Petitioner has provided some evidence on the matter, the Court need not determine whether he is a flight risk. *See Sai Zhao Jiang v. Chertoff*, No. 06-cv-4486 (DSD/RLE), 2008 WL 80582, at *8 (D. Minn. Jan. 8, 2008) ("[W]e do not review the INS' discretionary determination that Jiang should be detained, during her removal proceedings, as a flight risk. Instead, we consider whether her pre-removal-period of detention has exceeded constitutional limits.").

Respondents appear to argue that the Supreme Court categorically approved indefinite detentions under 8 U.S.C. § 1226(c). However, as they acknowledge, the Second and Ninth Circuits have held that six months is a reasonable time period for pre-removal detention, and that a longer time period may violate constitutional rights. *Lora v. Shanahan*, 804 F.3d 601, 616 (2d Cir. 2015), cert. denied, 136 S. Ct. 2494 (2016); *Rodriguez v. Robbins*, 715 F.3d 1127, 1131 (9th Cir. 2013). Respondents insist, however, that even if this Court follows precedent from other circuits as well as the

decisions from other courts in this District cited above, Petitioner's detention is still constitutional. They argue that Petitioner was very close to being deported before his final order of removal was overturned. Indeed, had his motion to reopen his immigration case not been granted, Petitioner would likely have been repatriated already. Respondents also predict that Petitioner will be subject to a final order of removal again, and that although his travel documents have expired, the Cambodian government will likely reissue a travel document if ICE's removal order again becomes final. But this prediction is based on hearsay from an ICE agent without any apparent foundation for his expectations about either the outcome of Petitioner's case before the Board of Immigration Appeals or the future actions of the Cambodian government. Agent Lee's declaration is at odds with the subsequently published article from The Cambodian Daily, which reported that the Cambodian government is halting the issuance of new travel documents, to which Respondents have made no reply. The Court therefore finds no basis in the record to conclude it is reasonably likely that Petitioner will be successfully repatriated in the near future.

Respondents also argue that there is "nothing in the record to suggest that the removal proceedings are being delayed by the government or overly protracted." (Supp. Resp. Pet. Habeas Corpus at 8 [Doc. No. 17].) (The Court notes that Respondents filed their brief with this Court before asking the Board of Immigration Appeals for a three-week extension of the briefing deadline in Petitioner's case.) Respondents do not address how much longer they expect the pre-removal proceedings to last before the Board of Immigration Appeals. In his reply, Petitioner contends that any decision by the Board of

Immigration Appeals is not likely until three or four months after the August 10, 2017, briefing deadline, and that may be followed by a petition for review to the United States Court of Appeals for the Eighth Circuit. While Petitioner does not cite any authority for his projection, the Court can easily assume Petitioner is likely to be detained for at least several more months; if his detention is allowed to run its course without intervention by this Court, then by the time he is eventually released or removed, he will have been detained for four times (or more) the reasonable detention period identified in *Demore* and *Zadvydas*.

The Court therefore recommends granting the habeas petition because Respondents have not shown that there is a reasonable likelihood Petitioner will be repatriated in the future and Petitioner has now been in detention for more than thirteen months, and will likely be detained for another several months or even a year longer, violating his due process rights.[1]

## III. Conclusion

In its initial memorandum in opposition of the habeas petition, Respondents ask that if the Court grant habeas relief, the Court remand this matter to ICE to allow it to

---

[1] Because the Court finds that habeas relief should be granted for the constitutional violations explained above, it does not address Petitioner's argument that his detention is not authorized under 8 U.S.C. § 1226(c). In short, Petitioner argues that the Court must give effect to the statutory language "when released" from state custody. Petitioner contends that because he has already been released from any sentence of confinement after he was discharged from probation in 2011, the rationale of that statute, which seeks to ensure noncitizens appear for their removal proceedings, is no longer applicable. Petitioner concedes in his briefing that federal courts are split on this issue.

establish conditions of supervised release.  The Court recommends granting the petition for habeas relief and recommends a remand for ICE to establish those conditions.

Accordingly, based on all the files, records, and proceedings herein **IT IS HEREBY RECOMMENDED** that:

1. The Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [Doc. No. 1] be **GRANTED**;

2. Motion for Leave to File Evidence in Support of Petition for Habeas Corpus [Doc. No. 21] be **GRANTED**; and

3. This matter be remanded to ICE to allow the agency to establish appropriate conditions for Petitioner's supervised release.

Dated:  September 14, 2017      s/ *Hildy Bowbeer*
                                HILDY BOWBEER
                                United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.